**Below is a Memorandum Decision of the Court.**

*[signature]*

**Mary Jo Heston**
**U.S. Bankruptcy Judge**

**(Dated as of Entered on Docket date above)**

---

# UNITED STATES BANKRUPTCY COURT

## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>SOVRAN LLC,<br><br>               Debtor. | Case No. 11-45107-PBS |

| | |
|---|---|
| THE BENAROYA COMPANY LLC, a Washington limited liability company,<br><br>             Plaintiff<br><br>    v.<br><br>LEWIS COUNTY, a County,<br><br>             Defendant<br><br>and<br><br>STATE OF WASHINGTON, DEPARTMENT OF REVENUE<br><br>        Intervenor-Defendant. | Adversary No. 25-04023-MJH<br><br><br>**MEMORANDUM DECISION ON**<br><br>**MOTION FOR SUMMARY**<br><br>**JUDGMENT** |

| |
|---|
| STATE OF WASHINGTON, DEPARTMENT OF REVENUE,<br><br>        Counter-Claimant<br><br>    v.<br><br>THE BENAROYA COMPANY LLC, a Washington limited liability company,<br><br>        Counter Defendant. |

This matter came before the Court on August 7, 2025, on a motion for summary judgment filed by Plaintiff The Benaroya Company LLC ("Benaroya") in the above-referenced proceeding pursuant to Fed. R. Bankr. P. 7056[1] ("Motion"). Defendant Lewis County takes no position at this time. Intervenor Defendants, the State of Washington ("Washington") and the Washington State Department of Revenue ("Department of Revenue") (collectively "State Defendants"), oppose the Motion. Having considered the arguments of counsel, the pleadings, and other documents in the record, the Court hereby makes the following findings of fact and conclusions of law.

## I. PROCEDURAL HISTORY

On March 18, 2025, Benaroya filed this adversary proceeding. Pl.'s Compl., ECF No. 1. In its complaint, Benaroya seeks an order declaring the respective rights and duties of Benaroya and Lewis County, requiring Lewis County to accept a deed of conveyance to a buyer from Benaroya on a sale, accept Benaroya's Property[2] real-estate tax affidavit that excludes excise tax, and accept Benaroya's Property conveyance and affidavit without payment of the excise tax to Lewis County. Pl.'s Compl. ¶¶ 6.1–6.2, ECF No. 1. On June 3, 2025, Lewis County filed its answer to the complaint. Def. Lewis Cnty.'s Answer, ECF No. 11. In its answer, Lewis County asserted that "so as to enable the Court to accord complete relief and avoid the waste of judicial resources and duplicative actions pertaining to common questions of facts or law" that the State of Washington Department of Revenue should be joined as a party in accordance with Fed. R. Civ. P. 19(a)(1) and/or Fed. R. Civ. P. 20(a)(2). Def. Lewis Cnty.'s Answer ¶ 7.1, ECF No. 11.

On June 12, 2025, Benaroya filed the Motion supported by the Declaration of Marc Nemirow. Pl.'s Mot. Summ. J., ECF No. 14; Nemirow Decl., ECF No. 15. Benaroya

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Federal Bankruptcy Code, 11 U.S.C. § 101–1532, and to the Federal Rules of Bankruptcy Procedure, 1001–9037.

[2] Approximately 248 acres of raw land located in Lewis County ("Property"). Pl.'s Compl. ¶ 3.17, ECF No. 1. As explained *infra*, the Property consisted of approximately 320 acres of raw land when the petition was filed. Nearly 72 acres was later sold, leaving the 248 acres currently at issue.

scheduled the Motion for hearing on July 10, 2025. On June 18, 2025, Benaroya filed a Notice of Amended/Continued Hearing, resetting the hearing on the Motion for August 7, 2025. Notice Am. Hr'g, ECF No. 16.

On July 3, 2025, the State Defendants filed a motion to intervene in this proceeding as intervenor defendants, along with a proposed answer to Benaroya's complaint and counterclaim, two supporting declarations, and a notice of consent to entry of final orders or judgment by the bankruptcy court. Intervenor Defs.' Mot. Intervene, ECF No. 20. On July 10, 2025, the State Defendants filed a stipulation and agreed order, signed by counsel for Benaroya and Lewis County, granting the motion to intervene. Stipulation Grant'g Mot. Intervene, ECF No. 24. On July 24, 2025, the State Defendants filed their answer to Benaroya's complaint and counterclaim. Intervenor Defs.' Answer and Countercl., ECF No. 26.

In their counterclaim, the State Defendants assert a cause of action for unjust enrichment, alleging that Benaroya's refusal to pay excise taxes serves only itself with no benefit to the bankruptcy estate. Intervenor Defs' Answer and Countercl. ¶ 4.4, ECF No. 26. They also seek a declaratory judgment that Benaroya is required to pay real estate excise taxes imposed by Wash. Rev. Code 82.45 on the unrealized sale of properties secondary to the original transfer. In doing so, the State Defendants assert that by virtue of this adversary proceeding, "an actual controversy has arisen and now exists between State Defendants relating to Plaintiff's entitlement to market and then sell the remaining property without paying the real estate excise tax imposed by Wash. Rev. Code 82.45.060." Intervenor Defs' Answer and Countercl. ¶ 5.2, ECF No. 26.

On July 28, 2025, Lewis County filed a limited, non-oppositional response to the Motion. Def. Lewis Cnty.'s Resp. Mot. Summ. J., ECF No. 31. On July 30, 2025, Benaroya filed its reply to the State Defendants' counterclaim. Pl.'s Reply to Countercl., ECF No. 32. In its reply, "Benaroya admits that declaratory relief is necessary, in reply to paragraph 5.2 of intervenor defendants' counterclaims, but denies the balance of that paragraph on

the ground that Benaroya's excise-tax exemption is consistent with the dictates of this Court's confirmed reorganization plan and Code Section 1146(a)." Pl.'s Reply to Countercl. ¶ 18, ECF No. 32.

On July 31, 2025, the State Defendants filed a response to the Motion. Intervenor Defs.' Resp. Mot. Summ. J., ECF No. 33. Benaroya filed its reply in support of the Motion on August 4, 2025. Pl.'s Reply in Supp. of Mot. Summ. J., ECF No. 36. On August 7, 2025, the Court held a hearing on the Motion and heard argument from the parties. At the conclusion of the hearing, the Court took the matter under advisement.

## II. FACTUAL BACKGROUND

### A. Chapter 11 Bankruptcy Proceeding.

The debtor, Sovran LLC ("Sovran"), filed chapter 11 bankruptcy on June 23, 2011. Bankr. Case No. 11-45107-PBS, ECF No. 1. Sovran's primary asset at the time of petition was the Property, which consisted of approximately 320 acres of raw land located in Winlock, Washington, and was valued by Sovran in its schedules at $18,945,000. Bankr. Case No. 11-45107-PBS, Sched A, ECF No. 6.. Sovran's schedules listed Benaroya and Lewis County as holder of claims secured by the Property. Bankr. Case No. 11-45107-PBS, Sched D, ECF No. 6. On October 5, 2011, on the joint motion of Benaroya and Timberland Bank, the Court entered an Order Determining that Debtor Sovran LLC is a Single Asset Real Estate Entity as defined in § 101(51B). Bankr. Case No. 11-45107-PBS, ECF No. 40.

The State Defendants received notice of the bankruptcy filing and 341 meeting through the Bankruptcy Noticing Center on July 12, 2011. Bankr. Case No. 11-45107-PBS, ECF No. 10. The State Defendants, who were not creditors at the time of the petition filing, were not included in Sovran's list of creditors, nor does it appear that they were ever added to the mailing matrix at any time during the pendency of the case. Lewis County, however, was included on the creditor matrix and filed three claims in the bankruptcy case and also cast a ballot rejecting Sovran's original plan of reorganization. Bankr. Case No. 11-45107-PBS, Claim Nos. 5–7; Debtor's Local Rule 3020 Stmt., ECF No. 123. The bankruptcy

schedules did not list any claims held by either of the State Defendants, nor did either of the State Defendants file a claim in the case.

**B. Sovran's Plan of Reorganization and Order Confirming Plan.**

On May 18, 2012, Sovran filed its Second Amended Chapter 11 Plan of Reorganization ("Plan"). Bankr. Case No. 11-45107-PBS, ECF No. 117. The Plan incorporated the terms of a settlement agreement entered into between Sovran and Benaroya. Bankr. Case No. 11-45107-PBS, ECF No. 118. The Plan classified Benaroya's claim, Class 2a, as an impaired allowed secured claim in the amount of $7,189,221, and classified Lewis County's claim, Class 2c, as an unimpaired allowed secured claim. Bankr. Case No. 11-45107-PBS ¶¶ 5.3.1–5.3.3, ECF No. 117.

**1. Two-Step Transfer Procedure.**

**a. Step One: Sovran Conveys Property to Benaroya ("Step One").**

As part of a settlement with Benaroya and Lewis County on their allowed secured claims, and with other creditors, Sovran developed a consensual plan, which provided that all the Debtor's property would be transferred to Benaroya on the effective date of the Plan, subject to Lewis County's secured claims and free and clear of all other claims, liens, and interests of creditors and interest holders.[3] The Plan also provided a waterfall for payment of the proceeds between Benaroya and Sovran's creditors to be distributed under the Plan's terms following Benaroya's development and/or sale of the Property.

The Plan conferred upon Benaroya several duties and rights, including the following:

8.1.     Benaroya shall retain full discretion regarding any decisions related to the Property, including but not limited to: development, improvements, expenditures of any type, marketing, sales, financing, leasing, platting or parcelization, etc. It is understood that this discretion allows Benaroya to sell all or any part of the Property in a transaction whereby none or only some of the amount of the claims are paid to the potential Waterfall or Modified Waterfall recipients; provided, however, that all sales shall be for fair market value of the entire Property or the particular parcel.

---

[3] Lewis County and Benaroya had cast ballots objecting to the earlier filed plan. *See* Bankr. Case No. 11-45107-PBS, ECF No. 124.

Bankr. Case No. 11-45107-PBS ¶ 8.1, ECF No. 117.

### b. Step Two: Benaroya is to Develop or Sell the Property ("Step Two").

The second step of the Plan provides Benaroya with two options regarding the Property—develop any or all of the Property (Section 8.2) or sell the Property (Section 8.8), to satisfy its Total Cost. Benaroya's Total Cost is the sum of its Base Debt of $7,189,221 (the approximate amount of its secured claim), Benaroya's Limited Contribution of $70,000, Development Cost, additional costs expected to be incurred for all or part of the Property, and accrued Plan Rate of Interest of 8.75%. Bankr. Case No. 11-45107-PBS ¶¶ 2.8, 5.3.1.1, 8.3, 8.4, 8.6, 8.7, ECF No. 117.

If Benaroya decided to develop the Property, the following Plan provision applied:

> 8.2.     If Benaroya decides to develop any part of the Property, Benaroya will apply the fair market value of the parcel subject to the development to its Total Cost as of the date it decides to develop the parcel. In the event the fair market value of the parcel as of the application date exceeds Benaroya's Total Cost, Benaroya shall pay cash for the excess fair market value in accordance with the Waterfall or Modified Waterfall.[4]

Bankr. Case No. 11-45107-PBS ¶ 8.2, ECF No. 117.

Under this provision, Benaroya would (i) apply the fair market value of the to-be developed property against its Total Cost, and (ii) pay cash to the Disbursing Agent if the fair market value exceeded Benaroya's Total Costs as of the development-decision date. *Id.* ¶ 8.2; Pl.'s Compl. ¶ 3.9, ECF No. 1.

Alternatively, if Benaroya were to sell all or part of the Property, Benaroya would retain the net proceeds up to the amount of its unpaid Total Cost as of the closing date and pay any cash balance, in excess of the Total Cost, to the Disbursing Agent. The

---

[4] The Plan defines these terms as follows. "Waterfall: The provisions established for the disbursement of proceeds from the sale or development of the property established by ¶ 8.8.1 to ¶ 8.8.4 of the Plan." "Modified Waterfall: The provisions established for the disbursement of proceeds from the sale or development of all or part of the property established by ¶ 8.9.1 to ¶ 8.9.4 of the Plan." Bankr. Case. No. 11-45107-PBS ¶¶ 2.27. 2.38, ECF No. 117.

Disbursing Agent is Sovran, as the Reorganized Debtor. Bankr. Case No. 11-45107-PBS ¶ 2.18, ECF No. 117. If Benaroya elects to sell the Property, the Plan provides as follows:

> 8.8.     Upon the sale of all or part of the Property the net proceeds from any sale shall be distributed according to the following provisions:
>
> 8.8.1.     First, Benaroya will retain net proceeds from any transaction up to an amount equal to its Total Cost on the date of closing of the transaction;
>
> 8.8.2.     Second, if there are thereafter remaining net proceeds, after Benaroya has been satisfied for its entire Total Cost, Benaroya shall transfer such remaining net proceeds to the Disbursing Agent for deposit into the Administrative and Priority Claim Fund, up to an aggregate amount equal the sum of any allowed and unpaid Unclassified or Priority Claims plus the amounts to be returned by the Disbursing Agent to the Debtor's members pursuant to ¶ 7.12.
>
> 8.8.3.     Third, if there are thereafter remaining net proceeds, Benaroya shall transfer such remaining net proceeds to the Disbursing Agent for deposit into the Class 3 Dividend Fund, up to an aggregate amount equal to the total Allowed amount of all Class 3 Unsecured Claims plus interest on the outstanding principal balance of such claims at the federal judgment rate;
>
> 8.8.4.     Fourth, if there are thereafter remaining net proceeds, Benaroya shall transfer fifty percent (50%) of such remaining net proceeds to the Disbursing Agent for deposit into the Class 4 Dividend Fund and Benaroya shall retain the remaining net proceeds.
>
> 8.8.5.     In the unlikely event that there is a sale of less than 100 percent of the Property and if the net proceeds from the sale for a particular parcel exceeds 150% of Benaroya's Total Cost per usable square foot as of the date of closing of such sale on a per square foot basis, then the provisions of ¶ 8.9 will apply.

Bankr. Case No. 11-45107-PBS ¶ 8.8, ECF No. 117.

Additionally, the Plan provided the following provision relevant to the Motion:

> 8.11.     Pursuant to Section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with this Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the transfer of the Property to Benaroya **and any subsequent transfer or sale of any portion of the Property by Benaroya pursuant to, in implementation of, or as contemplated in this Plan** and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

> connection with, this Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, excise tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, excise tax, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

Bankr. Case No. 11-45107-PBS ¶ 8.11, ECF No. 117 (emphasis added).

On June 1, 2012, approximately one year after filing the case, the Court entered an order confirming the Plan ("Order Confirming Plan"). Bankr. Case No. 11-45107-PBS, ECF No. 130. The Order Confirming Plan includes a detailed provision similar to that contained in the Plan that identifies those transfers, etc., of the Property "under, in furtherance of, or in connection with, the Plan" that are exempt from excise taxes pursuant to § 1146(a). Bankr. Case No. 11-45107-PBS ¶ 9, ECF No. 130.

On the same day, the Court entered a Notice of Order Confirming Plan. Bankr. Case No. 11-45107-PBS, ECF No. 131. On June 3, 2012, the Bankruptcy Noticing Center provided a copy of the Notice of Order Confirming Plan to the State Defendants at the Attorney General's Office, Bankruptcy and Collections Unit. Bankr. Case No. 11-45107-PBS, ECF No. 133. No party filed a motion to reconsider the Order Confirming Plan or a Notice of Appeal of the Order Confirming Plan.

**C. Final Decree, Case Closure, and Adversary Proceedings.**

On June 20, 2014, the Court entered an order on Sovran's supplemental motions to fix the amount of claims participating in Plan distributions and for entry of a final decree ("Order on Supplemental Motions").[5] Bankr. Case No. 11-45107-PBS, ECF No. 176. Within

---

[5] As discussed in more detail later in this Memorandum Decision, the administrative closing of a case usually is done well before full completion or consummation of a plan, and the defined term "substantial consummation" as utilized in the context of Fed. R. Bankr. P. 3022 is not synonymous with "consummation." Substantial consummation, which is defined in § 1101(2) as the commencement of distribution under the plan and the transfer or all or substantially all property proposed by the plan, is different than consummation, which contemplates completing the plan, as discussed *infra* on pages 25–26.

the Order on Supplemental Motions, the Court recognized that the "confirmed Plan provides for the transfer of the Debtor's real property (Winlock Property) to Benaroya, subject to Benaroya's obligations under a waterfall arrangement following a sale or development of the Property." Bankr. Case No. 11-45107-PBS 2:17–19, ECF No. 176. Additionally, the Court acknowledged that while the Property had not yet been sold, this did not prevent entry of a final decree closing the case as a plan had been confirmed, Sovran's sole asset had been transferred to Benaroya, and Benaroya had made the required $70,000 contribution. Bankr. Case No. 11-45107-PBS 5:1–9, ECF No. 176. "When and if a sale occurs, the case may be reopened to resolve any issues related to the sale and distribution." *Id.* A final decree was entered in the case on July 1, 2014, and on July 16, 2014, the Court entered an order closing the case. Bankr. Case No. 11-45107-PBS, ECF No. 182–183.

Benaroya made a development decision to develop nearly 72 acres of the Property in May 2020, "as a non-cash distribution, Waterfall transaction, and later sold that acreage as a non-Waterfall transaction in 2021," and paid state excise tax in the amount of $944,860.23. Pl.'s Compl. ¶ 3.16, ECF No. 1; Adams Decl., ECF No. 20-3. The Department of Revenue later denied Benaroya's request to refund the excise tax. Adams Decl., ECF No. 20-3. Benaroya now concedes that if it elects the development option under the Plan, it will pay excise taxes for any subsequent sale and that the current Motion only applies to its election of the sale option. *See* discussion *infra* p. 15, lines 19–22. Benaroya currently lists the remaining 248 acres for sale with its commercial real estate broker, NAI Puget Sound Properties. Pl.'s Compl. ¶ 3.17, ECF No. 1.

On May 17, 2024, Sovran filed an action against Benaroya in Lewis County Superior Court, Case No. 24-2-00479-1 ("Lewis County Proceeding"). In its complaint, Sovran alleges that Benaroya failed to comply with certain requirements of the Plan and asserts various causes of action, including breach of contract, breach of covenant of good faith and fair dealing, conversion, constructive trust and an accounting. Adv. Proc. No. 24-4033-

MJH Ex. 1, ECF No. 1-1. On June 6, 2024, Benaroya filed a notice of removal of the Lewis County Proceeding to this Court, which is still pending. Adv. Proc. No. 24-4033-MJH, ECF No. 1.

On March 18, 2025, Benaroya filed this adversary proceeding.

### III. DISCUSSION

Benaroya asserts two causes of action in its complaint. The first cause of action is for a declaratory judgment answering "the following question of law: Is Benaroya entitled to an 11 U.S.C. § 1146(a) excise-tax exemption from the current marketing and future sale of the remaining Property?" Pl.'s Compl. ¶ 4.3, ECF No. 1. The second cause of action seeks "injunctive relief to bar Lewis County from refusing to accept a Benaroya Property deed of conveyance to a buyer, from refusing to accept Benaroya's Property real-estate tax affidavit that excludes excise tax, and from refusing to accept Benaroya's Property conveyance and affidavit without payment of the excise tax to Lewis County." *Id.* ¶ 5.2.

### A. Jurisdiction and Ripeness.

#### 1. Jurisdiction.

This Court has jurisdiction over the Motion and adversary proceeding under 28 U.S.C. § 1334(b). A bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

"A matter 'arises under' the Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010) (citations omitted).

A proceeding "arises in" a case under the Code "if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *Id.* (citations omitted).

An action is "related to" a bankruptcy case if the outcome of the proceeding could conceivably alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) in such a way as to impact the administration of the bankruptcy estate. *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (adopting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

Both Benaroya, in its complaint, and the State Defendants, in their counterclaim, assert that this Court has "arising under" jurisdiction over these matters. Pls.' Compl. ¶ 2.1, ECF No. 1; Intervenor Defs.' Answer and Countercl. 8:17–19, ECF No. 26. The Court agrees. This proceeding seeks a declaratory ruling regarding a statutory provision in the Code, § 1146(a). In addition, at issue are core proceedings under 28 U.S.C. § 157(b)(1), including, without limitation, (2)(L) confirmation of plans, and (O) other proceedings affecting the liquidation of assets of the estate. The Court therefore may enter a final order. *See In re T.H. Orlando Ltd.*, 391 F.3d 1287, 1292 (11th Cir. 2004) (In addressing the court's jurisdiction to adjudicate an issue under then § 1146(c), the Eleventh Circuit Court of Appeals stated that the "adjudication of substantive entitlements created by bankruptcy law falls squarely within the core jurisdiction of bankruptcy courts.").

Even if the Court did not have "arising under" jurisdiction, it clearly has "related to" jurisdiction. It is well established that bankruptcy courts have "related to" jurisdiction over postconfirmation proceedings that involve the interpretation and implementation of the confirmed bankruptcy plan that "'could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1198 (9th Cir. 2005) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). Matters affecting the interpretation, implementation, consummation, execution, or administration of a confirmed plan typically have the requisite close nexus for "related to" jurisdiction. *See also In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013). This adversary proceeding meets the *Pegasus Gold* test and all parties have consented to the Court's entry

of final orders or judgment. Notices Re: Final Adjudication & Consent, ECF Nos. 2, 12, 20-6.

### 2. Ripeness.

The Court also must determine whether Benaroya's declaratory action is ripe for review. While the State Defendants' Answer to Complaint raises ripeness as an affirmative defense, the second cause of action of their counterclaim acknowledges that an actual controversy has arisen regarding Benaroya's entitlement to market and sell the remaining Property without paying the excise tax under RCW 82.45.060. Intervenor Defs' Answer and Countercl. 11:13–18, ECF No. 26. The Court agrees that the declaratory action is ripe for determination.

Because ripeness is a question of timing, the court should determine ripeness based on the facts at the time of the court's decision. *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 208 (4th Cir. 2022) (citing *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974)). Ripeness has constitutional and prudential components. *U.S. v. Braren*, 338 F.3d 971, 975 (9th Cir. 2003). "The constitutional ripeness of a declaratory judgment action depends upon 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Braren*, 338 F.3d at 975 (citations omitted).

It is undisputed that Benaroya currently lists for sale with a commercial real-estate broker the remaining 248 acres of the Property. Nemirow Decl. ¶ 5, ECF No. 15. The largest transactional cost aside from the sales commission is the real-estate excise tax. Nemirow Decl. ¶ 7, ECF No. 15. In order to establish an asking price, negotiate, or respond to a sale offer, the broker must know whether a real-estate excise tax must be paid to Lewis County. Nemirow Decl. ¶ 7, ECF No. 15. As set forth in the State Defendants' Answer and Counterclaim, the State Defendants' position is that Benaroya is not exempt under the Plan or § 1146(a) from paying excise taxes upon the sale of the Property from

Benaroya to a third party. Based on the facts of this case, there is a substantial controversy between Benaroya and the State Defendants as to the applicability of § 1146(a). The adverse legal interest of the parties is immediate as Benaroya is in the process of marketing and selling the Property.

The prudential component of ripeness requires a more thorough consideration. *Braren*, 338 B.R. at 975. The court's analysis is guided by two considerations: "'[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.'" *Braren*, 338 F.3d at 975. The first element of prudential ripeness is met if the claim is primarily legal and does not require any further factual development. *In re PG&E Corp.*, Adv. Proc. No. 19-03003, 2019 WL 2477433, *9 (Bankr. N.D. Cal. June 12, 2019). The second element focuses on the hardship to the parties if the court does not make a determination.

In order for the Court to resolve the issue of whether § 1146(a) applies to the sale of the Property from Benaroya to a third party, there is no need for further factual development. This is a legal issue, and the undisputed facts necessary and relevant to make this determination are already part of the record—the language of the Plan and § 1146(a). As for the second element of prudential ripeness, the Court concludes that Benaroya, and consequently Sovran, face an immediate hardship if the issue is not addressed at this time. As indicated above, the Property is currently listed for sale, and payment of the taxes likely will affect marketing of the Property and establishment of an asking price. This, in turn, directly impacts any future distributions to Sovran's creditors under the Waterfall provision. The State Defendants articulate hardship based on diminished resources if the excise tax is not paid, but this would be the result of the Court rendering a determination, not the failure to do so, and therefore does not affect ripeness. The State Defendants, however, have also put this matter before the Court in asserting a counterclaim seeking a declaratory ruling by the Court that the excise tax is not exempt.

For the reasons set forth *supra*, the Court concludes that the requirements for both constitutional and prudential ripeness are met.

**B. Summary Judgment Standard.**

The party seeking summary judgment bears the burden of demonstrating that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). All inferences drawn from the evidence presented must be drawn in favor of the party opposing summary judgment, and all evidence must be viewed in the light most favorable to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be granted if, after taking all reasonable inferences in the nonmoving party's favor, the court finds that no reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The responding party may not rest upon mere allegations or denials of their pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 256.

As the moving party, Benaroya bears the burden of establishing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. All inferences from the evidence presented are drawn in the light most favorable to Lewis County and the State Defendants.

**C. Declaratory Relief Regarding § 1146(a).**

Benaroya seeks a declaratory judgment that it is entitled to an § 1146(a) excise-tax exemption from the current marketing and future sale of the remaining Property. Pl.'s Compl. ¶ 4.3, ECF No. 1. This is an issue of law that is appropriate for determination on summary judgment.

As an initial matter, to the extent the State Defendants contend the complaint is vague as to precisely which property Benaroya's requested relief applies, the Court finds no basis in the record to support this argument. It is evident from the Motion and Declaration of

Nemirow in support, that the only property at issue in this Adversary Proceeding is the remaining 248 acres of the Winlock property referenced in the Plan. *See* Bankr. Case No. 11-45107-PBS, ECF No. 117. This argument also has no merit in light of the October 5, 2011 Order Determining that Debtor Sovran LLC is a Single Asset Real Estate Entity. *See* Bankr. Case No. 11-45107-PBS, ECF No. 40. The property at issue is clearly defined. In addition, any order of this Court would only pertain to property that was provided for in the Plan.

Turning to the issue raised in Benaroya's declaratory action, § 1146(a) of the Code prohibits a stamp or similar tax on the "issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer **under a plan** confirmed under section 1129 or 1191 of this title."[6] § 1146(a) (emphasis added). In cases involving statutory interpretation, federal courts begin with the text of the statute. *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023). Congress enacted this provision to facilitate reorganization by giving debtors and their creditors tax relief from stamp or similar tax, such as transfer taxes, for transfers of property pursuant to an instrument of transfer under a confirmed plan. *See In re Jacoby–Bender, Inc.,* 758 F.2d 840, 841–42 (2d Cir. 1985).

The parties do not dispute that the Plan contemplated the sale of the Property by Benaroya to third parties in a two-step transaction and that the first-step transfer of the Property to Benaroya was exempt from taxation under § 1146(a). Benaroya also concedes that if it elects the Step Two option to develop all or part of the Property (as opposed to a sale), as it did with a small section of the Property, and later transfers that Property to a third party, that transfer would be subject to State excise tax. Pl.'s Reply 4:14–21, ECF No. 36. Further, the parties do not dispute that the Plan expressly provided in section 8.11

---

[6] In 2005, § 1146 was amended and revised by deletion. Former subsection (a), dealing with the taxable period under state and local law, and subsection (b), dealing with state and local tax returns, were moved to § 346. Subsections (c) and (d) of § 1146 were redesignated (a) and (b). 8 *Collier on Bankruptcy* P. 1146.01 (16th 2025). Section 1146 was further amended in 2019, to add the language "or 1191" to provide for plans confirmed under subchapter V of the Code. *Pub. L. 116-54, § 4(a)(12), Aug. 23. 2019, 133 Stat. 1079, 1086.*

that any subsequent transfers of the Property by Benaroya under the Plan would be exempt from real estate excise taxes under § 1146. Thus, the only dispute is whether § 1146(a) applies as a matter of law if Benaroya elects the Step Two option to sell all or part of the remaining Property to a third party. Bankr. Case No. 11-45107-PBS Plan ¶¶ 8.8, ECF No. 117.[7]

Accordingly, the Court finds that there are no material facts in dispute, and the issue before the Court is solely a question of law appropriate for resolution on summary judgment: whether § 1146(a) applies to any postconfirmation sales of the Property by Benaroya to third parties.

### 1. Section 1146(a)'s "Under a Plan" Meaning.

At its core, the issue in this case is whether future sales of the Property by Benaroya are "under a plan," within the meaning of § 1146(a). The Court begins with the language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). If the language of the statute is plain, the Court's sole obligation is to enforce the statute "according to its terms." *Id.* (citation omitted). By its terms, § 1146(a) exempts from stamp or similar taxes "an instrument of transfer under a plan confirmed" under chapter 11.

To ascertain the ordinary meaning of a statutory term, courts often begin with the dictionary. *See MCI Telecomm. Co. v. AT & T Corp.*, 512 U.S. 218, 227-28 (1994) (discussing the use of dictionary definitions to interpret statutory text). Several courts have looked to dictionary definitions of the term "under" in analyzing § 1146(a). *See In re 310 Assocs., L.P.*, 282 B.R. 295, 299 (S.D.N.Y. 2002) (relying on *The American Heritage Dictionary*); *In re NVR, LP*, 189 F.3d 442, 457 (4th Cir. 1999) (relying on *Black's Law*

---

[7] There is no dispute that a transfer must be made under a plan that has been confirmed. In 2008, the Supreme Court examined the same statutory text at issue here to resolve the split among the circuits as to whether the § 1146(a) tax exemption applies to transfers made before a plan is confirmed under chapter 11. *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 52-53 (2008). The court held that under the "most natural reading of § 1146(a)'s text, the provision's placement within the Code, and applicable substantive canons," § 1146(a) applies only to "transfers made pursuant to a Chapter 11 plan that has been confirmed." *Id.*

Dictionary and *Webster's II New Riverside University dictionary*). *The American Heritage Dictionary* definition of the term "under" when used as a proposition includes "[w]ith the authorization of."[8] Similarly, *Merriam-Webster Dictionary* defines "under" to include "subject to the authority, control, guidance, or instruction of." *Under*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/under (last visited Sept. 10, 2025). This definition provides as an example, "under the term of the contract," which seems the most applicable definition in the context of § 1146. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 70 (2012) ("Most common English words have a number of dictionary definitions . . . One should assume the contextually appropriate ordinary meaning unless there is reason to think otherwise."). Finally, *Black's Law Dictionary* defines "under" to include—most relevantly—"[a]ccording to; in accordance with; pursuant to<under the terms of the agreement>." *Black's Law Dictionary* (12th ed. 2024). There is no controlling authority in the Ninth Circuit on the legal issue that is before the Court. The Supreme Court caselaw on § 1146(a) and most of the out-of-circuit appellate-level caselaw involve whether § 1146(a) applies to preconfirmation transfers, and thus they are not directly on point. *See Piccadilly*, 554 U.S. at 52–53 (holding that § 1146(a) applies a stamp-tax exemption only to transfers made pursuant to a **c**hapter 11 plan that has been confirmed); s*ee, e.g.*, *In re Hechinger Inv. Co. of Del., Inc.,* 335 F.3d 243, 257 (3d Cir. 2003) (holding that § 1146 did not apply to real estate transaction that occurred prior to confirmation of a chapter 11 plan). Nonetheless, the Court finds the reasoning applied in these cases to be instructive as the Court determines whether the sale of the Property by Benaroya to a third party is "under a plan" as used in § 1146(a).

Based on the Court's review of the caselaw, all circuit-level courts that have interpreted the phrase "under a plan" have required that the transfer be either an integral part of, or

---

[8] *Under*, ahdictionary.com, www.ahdictionary.com/word/search.html?q=under (last visited Sept. 10, 2025).

at least be contemplated by, the plan. The precise standard adopted by various courts contains some variations. For instance, the Eleventh Circuit Court of Appeals has interpreted "under a plan" to refer to "a transfer authorized by a confirmed Chapter 11 Plan." *Orlando*, 391 F.3d at 1291. In *Hechinger*, the Third Circuit Court of Appeals also held that the "phrase 'under a plan confirmed' in 11 U.S.C. § 1146(c) was most likely intended to mean 'authorized by a plan confirmed.'" *Hechinger*, 335 F.3d at 254. Similarly, the Fourth Circuit Court of Appeals concluded that the term "under" may be construed as "[w]ith the authorization of" a chapter 11 plan. *NVR*, 189 F.3d at 457 (quoting *Webster's II New Riverside University Dictionary 1256 (1988))*. Finally, in *Jacoby-Bender*, the Second Circuit Court of Appeals declined to read the statute as "require[ing] that the reorganization plan include specifics," and instead asked whether the transfer is "necessary to the consummation of the plan." 758 F.2d at 841-42 (2d. Cir. 1985). The Second Circuit ultimately concluded that a chapter 11 plan impliedly authorizes any transfer that is necessary to consummation of the plan. *Id.*

While these cases are instructive, the Court finds that some of the decisions, including the *Jacoby-Bender* decision—all of which were determined prior to *Piccadilly* in 2008— ignore the plain language of § 1146(a) and read into the statute language that is not there. If statutory language is plain and unambiguous as to the dispute in the case, the inquiry ceases. *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). Further, as cautioned by the Supreme Court, courts should not read language into an unambiguous statute. *See Barnhart*, 534 U.S. at 454. Here, § 1146(a) provides that a "transfer under a plan confirmed" under chapter 11 may not be taxed. The statute does not include language requiring that a transfer be an integral part of the plan, or necessary to consummation of plan, or necessary to confirmation of the plan. Nor do the common meanings of "under" require such a result. *See supra*, pg. 16-17. The Court finds the most natural reading of the text at issue—transfer under a plan confirmed—to be a transfer made pursuant to,

according to, or authorized by a confirmed chapter 11 plan. The Court declines to read into § 1146(a) any other requirements imposed on such a transfer.

This approach is consistent with *Piccadilly*. Although *Piccadilly* did not directly address the narrow issue of what "under a plan" means, when deciding the meaning of "under a plan confirmed" under chapter 11, the Supreme Court relied on the most natural reading of the text and concluded that only post-confirmation transfers "made pursuant to a Chapter 11 plan" were afforded stamp-tax exemption. *Piccadilly*, 554 U.S. at 52-53. Thus, the Supreme Court used "pursuant to" in place of "under" when referring to § 1146(a)'s "under a plan confirmed."

While not necessary for this Court's determination, this interpretation also is consistent with the legislative history of § 1146. The Report of the House Judiciary Committee stated:

> Another provision that affects the method of taxation in bankruptcy applies only in chapter 11. Section 1146(c) of title 11 is modeled after section 267 of the Bankruptcy Act which exempts any security or transfer instrument dealt with under a confirmed chapter X plan from any State or Federal stamp tax. Section 1146(c) of title 11 broadens the exemption to any stamp tax or similar *842 tax on a security or a transfer instrument dealt with under the consolidated chapter 11. No opposition has been voiced with respect to this section.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 281 (1977), reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6238. A transfer that is authorized by a plan is likewise "dealt with" under a plan. Further, this is consistent with the purpose behind § 1146(a), which is to facilitate reorganization and reduce obligations to increase proceeds available to creditors. *See Jacoby–Bender*, 758 F.2d at 841–842; *Kerner*, 188 B.R. at 124.

Finally, this textualist and common-meaning approach utilized by the Supreme Court generally[9] should reduce unnecessary litigation over whether a particular transfer qualifies as "under a plan" based on standards that each court invents for itself. *See* Karen

---

[9] *See* Anita S. Krishnakumar, *Textualism in Practice*, 74 Duke L.J. 573 (2024).

Cordry & Zach Mosner, *Of Molehills and Mountains: Deconstructing the Analysis of Piccadilly*, Am. Bankr. Inst. J., Feb. 2009, at 12 (discussing the consequences if the Supreme Court in *Piccadilly* had held that in certain circumstances, preconfirmation transfers fell within § 1146(a)).

The Court recognizes that some courts have applied what appears to be a somewhat stricter standard than "authorized by" a confirmed plan and have used terms such as "required," "necessary," or "essential." *See, e.g., In re Eastmet Corp.* 907 F.2d 1487, 907 F.2d 1487, 1489 (4th Cir. 1990) (the recording of a mortgage to secure a loan to purchase property from the estate was not "under a plan" because the plan did not "require" the financing be accomplished through a purchase money deed of trust); *In re 310 Assocs.*, 282 B.R. 295, 298 (finding that the transfer at issue was not an "essential" component of any plan at the time the transfer took place); *Orlando*, 391 F.3d at 1294 (holding that the critical inquiry under 1146 is whether the transaction is "necessary" to the consummation of the plan). These cases are not binding on this Court and generally are distinguishable for other reasons, such as involving preconfirmation transfers, or that the transfers at issue were clearly not authorized by or otherwise dealt with in the plan.

Additionally, it appears that courts have taken the Second Circuit's decision in *Jacoby-Bender* and extended it further than intended or the plain language of the statute requires. As stated prior, the Second Circuit held that "where, as here, a transfer, and hence an instrument of transfer, is necessary to the consummation of a plan, the plan seems implicitly to have 'dealt with' the transfer instrument." *Jacoby-Bender*, 758 F.2d at 842. Some courts have cited to this language for the proposition that "under a plan" means "necessary to consummation." *See, e.g. Orlando*, 391 F.3d at 1291–92. This Court disagrees with this interpretation. This Court reads *Jacoby-Bender* and the other cases cited *supra*, to require that the transfer be "authorized by" the plan, and that a transfer that is "necessary to consummation" or "required by" or "essential to" is impliedly "authorized by" a plan, but not the standard. In other words, a transfer that is demonstrated to be

"necessary to consummation" is impliedly "authorized by" the plan, but a transfer that is "authorized by" the plan is not necessarily "necessary to consummation."

The Court also recognizes the federalism canon that tax-exemption statutes are to be construed narrowly. *See Piccadilly*, 554 U.S. at 50; *see also United States v. Centennial Sav. Bank FSB*, 499 U.S. 573, 583 (1991). For this reason, a court should ""proceed carefully when asked to recognize an exemption from state taxation that Congress has not clearly expressed."" *Piccadilly*, 554 U.S. at 48 (quoting *Cal. State Bd. Of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 851–52 (1989)). This canon, however, is not in conflict with the plain-language canon of statutory construction, but instead can be applied in conjunction with it. *See Piccadilly*, 554 U.S. at 48, 50–52. In *Piccadilly*, when determining whether § 1146 applies to preconfirmation transfers, the Supreme Court reached its conclusion by applying the most natural reading of the statute notwithstanding the federalism canon. In doing so, the Court agreed with the Fourth Circuit's summation of § 1146(a):

> 'Congress struck a most reasonable balance. If a debtor is able to develop a Chapter 11 reorganization and obtain confirmation, then the debtor is to be afforded relief from certain taxation to facilitate the implementation of the reorganization plan. Before a debtor reaches this point, however, the state and local tax systems may not be subjected to federal interference.'

*Piccadilly*, 554 U.S. at 52 (quoting *NVR*, 189 F.3d at 458). For this reason, the Court believes that the proper standard adopts the plain language of the statute and nothing further.[10]

Thus, applying the plain-language standard to this case, the inquiry is whether under the terms of the Plan, sales of the Property by Benaroya to third parties are transfers "under" the Plan. Such transfers are "under a plan" if authorized by, according to, or pursuant to the confirmed Plan. Because the Plan terms are not in dispute, applying the

---

[10] "[T]he language of § 1146(c) is plain and requires no great manipulation to interpret its terms." *NVR*, 189 F.3d at 457.

§ 1146(a) standard to this case does not raise any issues of material fact, and the question raised by Benaroya is appropriate for resolution as a matter of law.

### 2. The Plain Language of § 1146(a) Does Not Preclude Transfers from Non-debtors to Third Parties.

The State Defendants argue that § 1146(a) does not contemplate transfers under a plan by a nondebtor or a party acting on behalf of a debtor. Nowhere in the language of the statute, however, is there a requirement that the transfer be by a debtor-in-possession. To the contrary, § 1146 only references transfers "under a plan."

Significantly, the statute does not identify an actor but instead is written in the passive voice: "[t]he issuance, transfer, or exchange . . . under a plan confirmed under section 1129 or 1191 of this title, may not be taxed." § 1146(a).[11] The absence of an actor in § 1146—and use of the passive voice—signifies that the actor is unimportant; instead, the focus is on the characterization of the event. *See Bartenwerfer*, 598 U.S. at 75 (where the Supreme Court held that by the terms of § 523(a)(2)(A), Congress framed the statute to focus on an event that occurs without respect to a specific actor). Indeed, "[p]assive voice pulls the actor off the stage. . . The debt must result from someone's fraud, but Congress was 'agnosti[c]' about who committed it." *Bartenwerfer*, 598 U.S. at 75-76 (quoting *Watson v. United States*, 552 U.S. 74, 81 (2007)).

Like § 523(a)(2)(A), which does not identify an actor, § 1146(a) does not identify *who* must make a transfer but rather whether a transfer is made in accordance with a confirmed plan. Thus, the plain text of § 1146(a) does not limit who can make a transfer to be entitled to the tax-exempt provision.

---

[11] Addressing the State Defendants' argument, § 1146(a) is distinguishable from WAC 458-61A-207(1), as the WAC explicitly applies only to transfers made by a specific actor: "The real estate excise tax does not apply to the transfer of real property by a trustee in bankruptcy or debtor-in-possession made after the plan is confirmed under a chapter 11 or 12 plan." More importantly, federal law preempts real estate taxes on these transfers. Thus, § 1146(a) takes precedence over conflicting provisions of WAC 458-61A-207(1) under the Supremacy Clause, U.S. Const. art. VI, § 2.

The Court recognizes that at least two bankruptcy courts from outside the district have concluded that § 1146(a) does not extend to nondebtor transactions. *See In re Bel-Aire Invest., Inc.*, 142 B.R. 992, 996 (Bankr. M.D. Fla. 1992) (holding that § 1146 should not be extended to a transaction entered into by a nondebtor corporation after it received assets from a debtor, when the debtor is not a party to that transaction); *Amsterdam*, 103 B.R. at 460 (concluding that Congress did not intend for § 1146 exemptions to apply to transfers between nondebtors). Not only are these decisions nonprecedential, but they are also distinguishable because they involved transactions between nondebtors that were not specifically authorized by a chapter 11 plan.[12] Moreover, these cases were decided prior to the Supreme Court's recent decision in *Bartenwerfer*, where the Supreme Court recognized the effect of the passive voice in a bankruptcy statute.

Thus, nothing in the plain language of § 1146(a) restricts its application to transactions involving the debtor or estate property. The critical inquiry instead is whether the transfer is "under a plan," not whether the transfer was made by the debtor. *See Orlando*, 391 F.3d at 1295 (11th Circuit held that nothing in the plain language of § 1146 restricts the exemption to transactions involving the debtor and estate property).

### 3. The Plain Language of § 1146(a) Does Not Preclude Two-step Transfers.

Benaroya argues that it is entitled to judgment as a matter of law because the plain language of § 1146(a) clearly provides for two-step transfers under the Plan. It further argues that the statute only requires that transfers be authorized by the Plan and that such transfers be necessary to facilitate the Plan's terms.

In support of its argument, Benaroya cites *State of Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777 (4th Cir. 1997), for the proposition that two-step

---

[12] In *Bel-Aire*, refinancing by a nondebtor was not exempt because it was not a transaction in "furtherance of consummation of the terms of the Confirmed Plan, but independent of any of the specific terms of the Confirmed Plan." *Bel-Aire*, 142 B.R. at 996. In *Amsterdam*, the transaction at issue was a third-party purchaser's grant of a mortgage to a bank in order to finance a purchase of estate property. The court determined that the transaction was not exempt because it was not a transfer "*under* a Chapter 11 plan." *Amsterdam*, 103 B.R. at 460.

transactions, like the one outlined in the Plan, fall within the scope of § 1146(a). Although the case was decided on different grounds, the *Antonelli* court noted that the Code does not explicitly ban such transfers. *Id*. at 784. It explained that § 1123 specifies the necessary and allowed contents of a plan, and that § 1123(b) permits the liquidation of all or nearly all the estate's property. *Id*. at 785. Furthermore, § 1123(a)(5) states that a plan "shall . . . provide adequate means for the plan's implementation, such as . . . transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan," indicating that adequate means can be included as long as they are appropriate and consistent with applicable provisions of the Code. *Id*.

The State Defendants assert that *Antonelli* is distinguishable because it ultimately held that the defendants in that case had received proper notice of the plan and were bound by the plan terms under § 1141(a).

The Court finds that the Fourth Circuit's reasoning in *Antonelli*, though dicta, persuasive and agrees that there is nothing in the statute prohibiting the application of § 1146(a) to two-step transactions. "It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 2000)). Section 1146(a) by its terms is plain and does not exclude two-step transactions. Accordingly, the transfers at issue in this case are exempt under § 1146(a) so long as Benaroya can establish that they are transfers "under" confirmed Plan.

### 4. The Plain Language of § 1146 Does Not Necessitate that a Transfer Be Required Under a Plan.

The State Defendants argue that the terms of the Plan itself do not require Benaroya to sell the Property for the Plan to be consummated, thus such a sale is not "under a plan." This argument suffers from the same deficiency as the State Defendants' argument

regarding transfers by a nondebtor. Under the State Defendants' reading, only *required* obligations to transfer property under the Plan are exempted under § 1146(a). The State Defendants argue that the Plan only required that the Property be transferred to Benaroya. Once the Property was transferred, Benaroya had the option to sell or develop the Property, but was not required to do so.

The State Defendants, however, again read into the statute requirements that are not there. Specifically, that the transfer must be "required" under the plan. As stated *supra*, for a transfer to be "under a plan," it must be "authorized" by the Plan.

The Court cannot and will not read into the statute language that is not there. *See Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020) (stating that a court may not narrow a provision's reach by inserting words Congress chose to omit.) Accordingly, the Court finds that under the plain reading of § 1146(a), it is sufficiently broad to include the transfer authorized by the Plan, notwithstanding that Benaroya had an option to not sell the Property if it so chose.

The State Defendants' argument also relies on a misconception of the meaning of the term consummation. According to the State Defendants, the future transactions cannot be necessary to consummation because the confirmed plan was "substantially consummated" when the Final Decree was entered on July 1, 2014, which contained a finding that "the Plan [has] been substantially consummated." Bankr. Case No. 11-45107-PBS, ECF No. 182.

As stated *supra*, this Court concludes that a transfer does not need to be "necessary to consummation" to be "under a plan" for purposes of § 1146. Rather, the key inquiry is whether the transfer is "authorized" by a confirmed plan. Moreover, the State Defendants appear to incorrectly use the terms consummation and substantial consummation interchangeably. Substantial consummation is a term of art defined by the Code.[13]

---

[13] "'[S]ubstantial consummation' means-- (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan

Whether a confirmed plan has been "substantially consummated" within the meaning of § 1101(2) may be a significant factor in determining whether a final decree should be entered, closing a chapter 11 case under § 350. Fed. R. Bankr. P. 3022. Entry of a final decree is an administrative event and does not determine substantive rights of parties in interest. *In re Greater Jacksonville Transp. Co.*, 169 B.R. 221, 224 (Bankr. M.D. Fla. 1994). Yet entry of a final decree and closing a chapter 11 case greatly reduces the administrative burdens on a debtor, as the debtor no longer has to pay quarterly U.S. Trustee fees or file monthly operating reports.

The caselaw's use of the term consummation in reference to § 1146, differs from the term substantial consummation (i.e., commencement of distribution under the plan), and instead uses the ordinary meaning of the term (i.e., completion of the plan). Similarly, *Merriam-Webster Dictionary* defines the term consummate to mean to finish, complete, to make perfect, or achieve. *Consummate*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/consummate (last visited Sept.10, 2025). "In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). Therefore, the fact that a Final Decree was entered in this case has no bearing on the issue of whether these transfers are exempt from taxation under 1146 as transfers "under a plan" confirmed.

### 5. The Transfers at Issue are Exempt Under § 1146(a).

The Court holds that the Property transfers at issue are exempt from excise tax under § 1146(a) if "authorized" by the confirmed Plan. The Plan contains detailed provisions

---

of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan." 11 U.S.C. § 1101(2). *See also* 7 *Collier on Bankruptcy* P 1101.02 (discussing that the concept of substantial consummation is relevant for reasons including  (1) determining whether a debtor may modify a confirmed plan postconfirmation; (2) as a factor courts consider in determining whether an appeal is moot after a plan has been confirmed; (3) in determining a bankruptcy court's postconfirmation jurisdiction; and (4) as a significant factor in determining whether a final decree should be entered closing a chapter 11 case).

regarding the disposition of the Property by both Sovran and Benaroya; the Plan terms themselves are not in dispute. In Step One, the Plan provides for the transfer of the Property from Sovran to Benaroya. The State Defendants do not dispute that this transfer was "under" the Plan, thus exempt from excise or stamp taxes pursuant to § 1146(a). In Step Two, the Plan contains two options for Benaroya: develop any or all of the Property (which involves no land transfers), or sell the Property, to satisfy its Total Cost as defined in the Plan.[14] Paragraphs 8.8 through 8.12 of the Plan provide the specifics in the event Benaroya chooses to sell the Property,[15] and Paragraph 8.11 explicitly states that pursuant to § 1146, such transfers will not be subject to excise or stamp taxes. This provision is contained in the Confirmation Order as well. As previously stated, these Plan terms were the result of settlement negotiations between Sovran and Benaroya, which the Court considered and approved when the Plan was confirmed. Case No. 11-45107-PBS, ECF Nos. 117, 118, 129, 130.

The Court has ruled that the plain text of § 1146 does not preclude two-step transfers, or transfers from nondebtors to third parties so long as such transfer are under a plan. Based on the terms of the Plan, the Court finds that the transfers at issue are made in accordance with the confirmed Plan.[16] Benaroya seeks to sell the Property as contemplated in Paragraphs 8.8 through 8.12, and any such transfer of the Property is explicitly exempt from excise taxes pursuant to Paragraph 8.11 of the Plan. Benaroya has established as a matter of law that the proposed third-party sales are therefore transfers "under a plan"

---

[14] The Court need not determine what the Total Cost would be in the case of a future sale as this is not relevant to whether a second-step sale is authorized by the Plan, and therefore exempt from taxes under § 1146(a).

[15] The Court points out, however, that the Second Circuit held in *Jacoby-Bender*, that plan provisions about a specific sale or delivery of a specific deed are not required to determine that a transfer falls "under" a plan within the meaning of § 1146(a). *Jacoby-Bender*, 758 F.2d at 841.

[16] The Court is not persuaded by the State Defendants' argument that the bankruptcy court's lack of jurisdiction to determine the hypothetical tax liability of Benaroya under § 505 provides support for its position that the second-step transfer is not "under the plan."

within the meaning of § 1146(a) and that it is entitled to judgment as a matter of law on its first cause of action.

### *6. Notice.*

The State Defendants contend that the Plan is not binding on them because of an alleged lack of notice. Section 1141(a) provides that the provisions of a confirmed chapter 11 plan bind the debtor, creditors, equity security holders, and general partners, regardless of whether they have accepted the plan or whether their claims are impaired under the plan. "Once the bankruptcy court issues an order confirming the plan, that document binds the debtor and its creditors going forward—even those who did not assent to the plan." *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 214 (2024).

The issue before the Court on Benaroya's declaratory action is a § 1146 issue, not a notice issue or res judicata issue. Significantly, the relief requested in Benaroya's complaint is not predicated on the res judicata effect of the confirmed Plan. Moreover, the Court has determined as a matter of law that § 1146(a) exempts sales of the remaining Property from the imposition of excise tax because the sales fall under the Plan, as contemplated by § 1146(a). For this and other reasons addressed in this Memorandum Decision, the Court need not determine whether the State Defendants are bound by the Plan terms under § 1141(a) based on the notice they received.

The same is true of the State Defendants' argument that additional notice of the injunctive relief sought in the Plan and disclosure statement was required pursuant to Fed. R. Bankr. P. 2002, 3016(c), and 3017(c). The plain language of Rules 3016(c) and 3017(f) limits application to injunctions "not otherwise enjoined by the Code." Fed. R. Bankr. P. 3016(c) 3017(f). These rules are inapplicable because the State Defendants are enjoined from collecting taxes by a specific provision of the Code—§ 1146(a)—as determined by this Court.

### 7. *Pending Adversary Proceeding No. 24-4033-MJH.*

The State Defendants argue that Sovran's pending adversary proceeding against Benaroya (Adv. Proc. No. 24-4033-MJH) requires denial of summary judgment. This is not the case. Even if Sovran ultimately prevails in that adversary proceeding and obtains a monetary judgment against Benaroya and/or a constructive trust is imposed, this will have no bearing on the issue of whether the sales proceeds are tax exempt under § 1146(a).

### D. Injunctive Relief.

On summary judgment, Benaroya further requests that the Court enjoin Lewis County from refusing to accept (1) a Benaroya Property deed of conveyance to a buyer, (2) a real-estate tax affidavit that excludes excise tax, or (3) a conveyance and affidavit without payment of the excise tax. While there is little practical difference between injunctive and declaratory relief, "declaratory relief 'is a much milder form' of relief because it is not backed by the power of contempt." *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1031 (9th Cir. 2023) (quoting *Steffel v. Thompson*, 415 U.S. 452, 471 (1974)). Injunctive relief is extraordinary, and should be granted sparingly, and only to the extent that the standards for such relief are satisfied and to the extent necessary to achieve the purpose of injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22–24 (2008). In suits against government officials and departments, "we generally assume that they will comply with declaratory judgments." *United Aeronautical*, 80 F.4th at 1031 (citing *Poe v. Gerstein*, 417 U.S. 281, 281 (1974) (per curiam) ("[T]here was 'no allegation here and no proof that respondents would not, nor can we assume that they will not, acquiesce in the [declaratory judgment] decision ....' " (citation omitted)).

According to Benaroya, Lewis County has declined to assure Benaroya that it will honor the § 1146(a) excise-tax exemption on a future sale by Benaroya of all or part of the Property. Nemirow Decl. ¶ 8, ECF No. 15. Yet, there is nothing in the record suggesting that Lewis County would not comply with this Court's declaratory judgment holding that Benaroya's sale of the Property pursuant to the Plan is exempt from excise tax under §

1146(a). A grant of injunctive relief requires additional findings and absent such evidence, the Court finds that Benaroya has not established as a matter of law that it is entitled to injunctive relief.

## IV. CONCLUSION

The Court finds that there are no genuine disputes of material fact and Benaroya is entitled to judgment as a matter of law as to Benaroya's first cause of action for declaratory relief. Two-step transfers, as authorized under the Plan, fall within the scope of § 1146(a). The Court further finds that Benaroya has not established as a matter of law that it is entitled to injunctive relief as requested in its second cause of action and such relief is unnecessary in light of this Memorandum Decision. Accordingly, the Court will enter an order consistent with its Memorandum Decision.

/ / / End of Memorandum Decision / / /